Next case on the call is number 128-051. People of the State of Illinois v. Von Zell Whitehead. Agenda number 12. Counsel for the appellant, are you prepared? Have a seat. Good afternoon, your honors, counsel, and may it please the court. My name is Zachary Wallace from the Office of the State Appellant Defender, and I'm here appearing on behalf of the defendant appellant, Von Zell Whitehead. Your honors, in this case, the phrase public place of accommodation or amusement under the aggravated battery statute has been stretched to such an extent that it's now argued the phrase encompasses the front stoop, immediately in front of the door to a private dwelling. How do you define stoop? What is this? Well, your honor, essentially, what it is here, you have the parking lot, essentially, which would be, I guess, if it's a home, it would be the equivalent of a driveway, but you have a walkway up to each individual residence, similar to like a motel almost. And the door is essentially, to my understanding, is elevated. So this stoop, you step onto the stoop and walk into the door. And the stoop is in front of the doors to the residences. So it's a step, a step up. Essentially, yes. Essentially a step up to the platform that you then walk into the door. It's outside the door, but it's between the public walkway and the front door. But there's a space in between. Yes, so essentially it's the private apartment complex, and then there's a walkway from essentially like the lot, where presumably the residents would park their cars. But the stoop is supposed to be connected to the house and the stairs? Or is it a separate piece that's on either side of the stairs? Well, your honor, admittedly, the photos are not the clearest. If you look at this exhibit, People's Exhibit 2, it kind of shows, but it's essentially blurry. But virtually, it's not a multi-floor building. No, no, I'm just saying the stairs, on either side of it, does it have something that is what they call a stoop that has a handle? Could it be used as a handle? I don't believe there's any testimony to ask you if there was a railing on both sides. I think it's just a step. Essentially, if you walk up to the home, the doorway is essentially elevated. So if you were to walk, you're walking on this sidewalk, and then you step up onto the platform. And if you walk forward from this platform, the step essentially, you're inside of the residence. So what part of that description is the stoop? The platform. The thing that you're stepping onto off of the walkway, you're stepping up onto this platform, that would be the stoop that's at the door to the residence. Because you step onto that and then walk into the apartment. What were the dimensions of the step? I don't believe in the record there's any testimony as to the dimensions of, like, the width or the height of it. I think it's just essentially what it was. They said there was a stoop, an elevated platform or elevated surface that was, to my understanding, fairly narrow, and it was in front of the doors to the units, and you step onto the stoop and walk into the door of the unit. So in this case, what's left is the defendant stepped down from his stoop and then onto the victim's stoop. Yes. So what was alleged here, the defendant's mother is actually a resident, a resident of these units. She lives in the building. And her door is next door to the complainant here. And what's alleged, the defendant is at his mom's house. He leaves. I believe he steps down off of this stoop. The complainant here opens his door, says something or not, and he says something to him and then steps up to the stoop, now in front of the complainant's door, this portion of the stoop, and then that's when the battery occurs while the complainant's inside of his residence. Isn't the real issue here not so much whether it's a stoop or whatever, but basically whether this is a public place of accommodation or amusement? Correct. I mean, do you take issue with the fact that this is publicly accessible? I don't. I think that, as Your Honor identified, it's publicly accessible in the sense that the public can access this location. It's an area, there's not an obstruction in the sense of a gate or certainly not like a guard keeping the public off. The public can go up to this location. And it's open to the public to come up and knock on the door, try to sell something or whatever the case may be. But could the public remain there? I mean, would the occupant have any say about a member of the public deciding just to hang out on their stoop? Yeah, so that's – and that's – as this is a brief, but that's – it's not a location that the public would frequent or loiter or stay for any purpose. To the extent that it's accessible to the public, it's typically going to be specific individuals or, more importantly, for a very limited purpose. It's a brief encounter, whether it be an invitee, you invite a guest over, they're coming to the stoop to enter the house, or even to the extent it was a cable repairman or even a salesman, it's for a very brief and limited purpose of coming to the door and approaching. And, Your Honors, importantly, the Aggravated Battery Statute does not define this phrase public place of accommodation or amusement. However, our third district in People v. Murphy construed the phrase to not only be places that are accessible to the public, but also locations that are essentially inviting the public in to partake in some good, service, accommodation, or something that's being offered. And here, the stoop, immediately in front of the door to one's residence, there's simply nothing inviting the public to partake in anything. There's no good, there's no service, and there's no accommodation being offered therein. And what's telling is when you compare this location to other places that reviewing courts to this point have found to be public places of accommodation. And the places that courts have found to qualify all comport with this common understanding that public place of accommodation is not just locations that are merely accessible to the public or a location that the public can technically access, but they're also locations that are inviting the public in. There's some good, there's some service or accommodation being offered. Do you find that the service is being offered to the public to come up? Well, again, I would argue it's there because it's a point of... The mailman comes up there, the Amazon man or woman, the neighbor. There's certainly a degree of the public will come up there, but I think what's important to note here is that these examples, such as a mailman or for the neighbor, it's all for the benefit of the homeowner. The stoop is there as a point of ingress to the home. The stoop is how you enter your home from the homeowner. To the extent that there's any amount of public presence there, it's typically at the request of the homeowner to the benefit of the homeowner. There's nothing at the stoop saying, inviting the public in, that there's some accommodation here. There's some good or there's some service. And this really differentiates this location from the types of places reviewing courts have found to be public places of accommodation. And... The question is, what is the legal issue here? The legal... The sufficiency of the evidence. Is it instructions? Is it... What is your statutory interpretation? What is your legal argument here? Your Honor, the legal argument here would be it's one of statutory interpretation, but it's really a sufficiency of the evidence, except the question is not that the facts aren't in dispute. The question here is then a legal one, because there's no facts in dispute. It's whether this evidence... Whether this evidence, this location is a public place of accommodation, which would then be a legal question, Your Honor. Isn't it because the legislative intent was to enhance the simple battery to an aggravated battery if the offense was committed on or about a public place of accommodation? Yes. So the statute's purpose, reviewing courts have found, it's to enhance misdemeanor battery in locations that are open to the public because there could be a greater harm to the public, I believe the court in Hanley had said. And is that possible under these very circumstances? Basically something, you know, starting or occurring on someone's stoop and the fact that there might be other members of the public or other residents out and about who could be harmed? Well, Your Honor, this... This measure of harm to the public, I believe the court in Pew v. Clark mentions you'd want to prevent batteries where the public frequents or loiters because batteries close to other people could harm, and it's a bystander essentially. This danger, when in the context of a stoop to somebody's home, is not present in the sense that in the same way as these other locations that are... that comport with this understanding that public place of accommodation is something more than just an accessible place, but something that the public is invited in. It's places where the public is going to frequent, where the public is at. And here, while in this specific case it could be it's an apartment, it's still a member's home. It's no different than if this were a house in a residential neighborhood. There's no... The public... And it goes back to an earlier point that while the public may approach for limited purposes, it's highly rare that you would have an offense occur at your front door of your house and there would be other members of the public, just by happenstance, being here. Because, again, there's nothing being offered. There's no sense of accommodation here. So, again, we're talking about sufficiency of the evidence. Correct. There was no motion to dismiss this indictment challenging the language, correct? There was no debate about instructions as to what the jury should be instructed about? Is that right? Well, so, Your Honor, initially this was not charged as public place of accommodation. The indictment charged it as aggravated battery based on public way. And then at the close of the evidence, the indictment was amended to public place of accommodation. And then... Was there any objection to that amendment after all the close of the evidence? I don't recall that there was an objection to that. However, I know it was argued at the time that this location is not a public place of accommodation. I think there... When was that first raised? Public place of accommodation? It was raised at the jury instruction conference, Your Honor. So it was initially, the indictment initially charged with aggravated battery on various ways, none of which including public place of accommodation. It was based on, essentially, like the age of the complainant or disability or public way. And then at the close of the state's case, the jury instruction conference, it was amended to public place of accommodation. And at that point, did the defendant object to either the amendment of the indictment or to how the jury was being instructed on this issue? I don't believe there is any objection to how the jury instructed. There is no instruction defining the term. Okay. So this whole issue of accommodation, what it means, was not raised anywhere during the trial? Well, it was argued by defense counsel at trial that this location is not, well, it was argued during trial it was not a public way because that's how it was charged. And then after it was amended, it was argued by defense counsel, certainly a closing argument, largely his argument was that this location is not a public place of accommodation. But the issue about how one defines accommodation was not raised during the trial? Your Honor, I don't believe the issue of defining it was necessarily raised because there's, as I explained in the brief, there's several cases, there's this accessibility of the public language, there's this language in Murphy, and there really is no definition here. So it was essentially, to my understanding, yes, of whether this constitutes this term that's undefined. What definition do you want the court to use? The definition that the court should use, I would argue, would be the historically understood meaning of the phrase. And that would be as very similar to as the Third District had noted in People v. Murphy, it would be not just a place accessible to the public, but a location that's inviting the public in to partake in some good service or accommodation. And this definition of the phrase is consistent with how the phrase has been used in other contexts, but more importantly, prevents the words of accommodation or amusement being rendered superfluous in the clause. If mere public accessibility was all that was required to turn a location into a public place of accommodation, then the phrase could stop after public place. Of accommodation or amusement has to mean something. And defining it merely as public accessibility renders those words essentially meaningless. Well, what would a porch be? A porch in the front of a private home would argue it fails for the same reason a stoop does. It would even be less. It's on a private home. There's nothing offered here. It's the homeowner's porch. They've chosen to build this porch for their benefit, not to accommodate or offer anything to the public. It's private property that's accessible to the public to come up to the door. Yes. Essentially, yes. The stoop here is private property. It's on the homeowner's door. It's on residential property. And it's accessible to the public in the sense that the public can approach it for a very limited purpose. If public accessibility was the only issue here, then why do we have all these different definitions in the statute? Public way, public place of accommodation, public building. I mean, if they'd all be lumped together as whether it's accessible to the public. Yes, Your Honor. That's really is the – that's correct. That's with – if public accessibility was all, that was meant. So to be a public place of accommodation, the only question was, is this place a place the public can access? Then you would not need public way, as you identified, the other sections of the statute. And moreover, it could lead to absurd results. I think it's important to note that even in the state's brief, they don't argue for this mere accessibility standard. And this is because if accessibility is alone, as was already discussed, it renders of accommodation or amusement and the other clauses superfluous. But it would also lead to absurd results where you could have locations that are absolutely private in nature, like driveways, unfenced yards, points of ingress or egress to the home. But if the public can technically access it, and the only question is can the public access this location, then it would essentially become a public place of accommodation, which would be overly broad, and you would have a situation similar to this, where you have a front door to a home. Obviously, the question here is not Fourth Amendment jurisprudence, but it is still a location that under – for Fourth Amendment purposes, is curtilage of the home. So it's a place that's certainly not public in nature, despite the limited access the public may have. And, again, it's important to note that our position is not that to become a public place of accommodation, a location has to be commercial in nature. It doesn't have to be a business. There has to be nothing necessarily commercial of it, as the state suggests. The question is not is the good or service or accommodation being offered commercial, or is there a monetary aspect to this. The question is, is there a good service or accommodation being offered? Are you inviting the public here to this public place? And there's several places that are not commercial in nature, like neighborhood baseball fields, private parks, neighborhood basketball courts, public skate parks, that are not commercial. There's certainly no monetization here, but it's a location that's accommodations, goods, the public's being invited in to partake in something. And that's just – that's noticeably absent from the stoop immediately at the front door of a private home. And then, additionally, the legislature could have defined this term more broadly. The legislature could have defined the term as public place, but they chose public place of accommodation or amusement, which is a much more limited term. And, again, while not necessarily defined, this phrase, public place of accommodation or amusement, did have a common understanding, even predating the enactment of the statute. Going all the way back to 1885 in the predecessor statute to the Illinois Civil Rights Act, you have – they list locations that comport with this idea of places accessible to the public where things are being offered or goods or services are being offered for the public to partake in. You're inviting the public in, and they list barbershops, theaters, hotels, things like that, and then other places of public accommodation or amusement. So this word had a common understanding, and there's simply nothing in the statute to suggest the legislature intended this category to be stretched to such an extent or to be interpreted so broadly to encompass private residential property. So if Your Honors have no further questions, I would just ask that because the stoop immediately in front of one's apartment door is not a public place of accommodation under the statute, Mr. Whitehead's aggravated battery conviction cannot stand. We would respectfully ask this Court to reverse this conviction and reduce it to misdemeanor battery. Thank you. Thank you very much. Good morning, Your Honors. Counsel, may it please the Court, Assistant Attorney General Alistair Whitney on behalf of the people. Your Honors, I think the definition here that the people are proposing that this Court adopt for the public place of accommodation for the purposes of the aggravated battery statute is a place that is made available to members of the public for their convenience or to otherwise satisfy a need. And this broad and common sense understanding and definition of the term comports with the legislative intent behind the statute, behind the statute's enactment, which was to prevent and to punish more severely these acts of violence occurring in places that could draw in an innocent member of the public or otherwise harm, excuse me, a member of the public. You know, given your idea of the definition, what's an example of something that's, you know, an entryway that would not be a public accommodation? Well, Your Honor, of course. Well, what's an example of it? I think in your hypothetical, to ask a question, in this hypothetical, perhaps given the facts of a particular case, a vestibule to an apartment building that has limited access where you would need to scan or buzz in the homeowner or the resident of the apartment would need to let you in, or there was a doorman there that would be, you know, serving as essentially a gatekeeper, allowing certain people in or not. So that could perhaps be a definition or, you know, an example. So your example would be any, like, apartment complex that would have initially limited entry, but once you got in and you went to any door, you know, that wouldn't be covered because there were limited entry. In any residential neighborhood, if you walk up to the stoop or porch of a house, that's a place of public accommodation under your theory, is that correct?  Of course, Your Honor. Any place, any neighborhood. It does depend on, I think, it does depend on whether this place was made available to the public. Now, certainly if it's a locked porch or not even a delivery person or a trick-or-treater or any other guest or even neighbor would be able just to walk in and knock on the front door, that may not qualify. But that would be certainly a fact for the jury and that particular case to determine. I mean, so any residential neighborhood where people go up to deliver a package or anything like that in a residential neighborhood, that's a place of public accommodation, is that right? Well, yes. And, of course, it does, it's very fact-specific here. I mean, what particular place we're talking about. Obviously, you know, the sidewalk and the driveway leading up to the door for a member of the public, such as a delivery person, to drop off a parcel or a package or to, you know, we just had election season, to canvass neighborhoods and to talk to the homeowners. We would say that that would be a public place of accommodation, of course, if there was no obstructions or if there was no locked gate or anything that would prevent, you know, that access. But the important thing to remember here for the purposes of the definition that we are recommending is that it needs to be a place that is made available to the public. And so the difference here between – You're focusing on exactly what the appellate court focused on. That was accessibility to the public. And the appellate court went out of its way to analyze that part. You know, I'm just concerned about the accommodation or amusement part. Okay, it's accessible. People can come up to your porch and put mail in the box or a package on the stove. But how is – what did the appellate court say about accommodation or amusement specifically? Not access. Accommodation or amusement. What did the appellate court say? Well, Your Honor, the appellate court didn't really analyze that term in isolation, but it did – It just didn't talk about it at all, did it? Yeah, I mean, but it did talk about this in this phrase, this entire phrase, and it did focus on the fact that, you know, it was publicly accessible. And that is important. But obviously, as case law shows, Your Honor, that mere public accessibility alone or that, you know, the fact that something – a place, for example, an unfenced backyard or a private person's – or a private resident's garage is insufficiently secured against trespass, but I could just walk in and trespass, there are limits to that, certainly. Well, the accommodation and amusement, those are limitations on the phrase. Yes, Your Honor. So the first step is determining under our definition that we propose is whether a place is made available to members of the public, right? So certainly private places like the inside of one's home, you know, a garage, that would not necessarily be a public place because it is not for the purposes of this statute. But you're talking about getting in. But at the front door of any residence, under your definition, that's a place of public accommodation and amusement, right? Well, not the front door, Your Honor. I mean, in this particular case, too, what we're talking about is not just a stoop or this common elevated step before one apartment unit. We're talking about a shared stoop between two residences, and that's located in this outdoor common area of this apartment complex and that anybody off the street can walk up onto it, like defendant himself in this case was able to walk up on it. And apparently this stoop itself was big enough for defendant to launch this attack on the victim here, Mr. Stephen Box, as he stood on it. So, and again, I would like to point out again, Your Honor, that, you know, these inquiries are very fact-specific. There are lines as people v. Snelling and people v. Olivari and the appellate court show, you know, just because somebody can physically, you know, bulldoze their way into a certain place does not necessarily mean that it is a public place of accommodation. In those cases, it was when one, it was a private, or excuse me, a closed-off ward in an emergency room hospital, and the other one was the emergency room of a hospital. So those were places that weren't made available to the public in the general sense. Again, you know, in any residential neighborhood, that front door entryway to any house in that neighborhood is a place of public accommodation, under your definition. I wouldn't say the door entryway, Your Honor, but I would say if there were steps leading up to the door, that would be a place that is, A, made available to the public, and for their convenience of accessing that elevated doorway, which is exactly what we have. So there's a small porch, there are two steps up to the door. Yes. So that's public accommodation. Yes. And, of course, again, if there was no fence or any other obstruction, that would kind of change the inquiry, I think. I'm not asking. There's no fence. Yeah. You don't have to unlock something to get to the, you just, you know, it's a residential neighborhood. Open off the street, off the side. A male person goes up and drops the letters into the mailbox near the door. And if the homeowner stepped out of his home and battered the male person on those steps, we do say that that is a public place of accommodation because it is made available to people like the delivery person for the homeowner's convenience. How does your definition, how does this fax here satisfy your definition? How is this something that's supplied for convenience or to satisfy a need? Well, Your Honor, I think as my colleague pointed out, these apartment units, the doorways of these apartment units, are elevated off the ground. So you can't just literally walk in off of the ground. Otherwise, you would need to make quite a big step to get up there. So the stoop is provided by the apartment complex owners to provide this convenient access into the... Well, you said the walkway, too, would be part of it, right? Would that be also a public place of accommodation when you said the walkway leading up to the stoop? Yes, because it is in this outdoor public common area of this apartment complex that is shared by the residents, their visitors, people, trick-or-treaters, anybody walking up there for that limited purpose of stepping up, under the stoop, knocking on the door, waiting to see if somebody answers, talking to the person, being invited into the home or leaving. And that would be a public place of accommodation, yes. My sense is this issue wasn't raised at all during the trial, right, about what is a public accommodation. And so, I mean, that's what counsel, I think, indicated, that this wasn't really the issue in the case. Was there any evidence introduced about how this area is used? Or what did the jury know? We're talking about, apparently, a sufficiency of the evidence case. Okay. What evidence did the jury have? So, Your Honor, I mean, the evidence, I think there was exhibits, pictures of, you know, a satellite picture of the apartment complex and pictures of the police officer stepping up onto that stoop and making contact with the victim. So there was evidence showing that, you know, people could walk up, you know, onto this stoop and make access to the victim and to defendant's mother who lived right next door. You're right. It wasn't really an issue that was brought up too much. I believe in closing argument, defense counsel made much, spent much of his time arguing about self-defense just because of the nature of the exchange between and the battery between defendant and the victim, Mr. Stephen Box. But I think he said in passing at the very end of closing argument that this was a private residence, and it is not. As we have discussed, this stoop was shared between two residences. It is in this outdoor common area of the apartment complex that can be accessed by anybody. So there's no evidence about, other than the pictures, which we've seen that they're attached to the brief, they're real dark, they're real hard to see, other than saying here's what it looks like, there was no evidence for the jury to know how they were being used one way or another. Well, I mean, there was. There's an area right before the door. I mean, there was the evidence about the very nature of this attack. Here, defendant was a visitor. He was able to walk up and use this stoop and was able to use it to attack his victim. Other than that, there wasn't any information about how this stoop might have been used, whether people, you know, set up lawn chairs on it and during consummatives drank iced tea on it and hung out on it. Say, for instance, that there was a gate and the defendant opened the gate, then it would be considered private property? Potentially, Your Honor. I mean, if we're talking about this very particular apartment. This particular place where the stoop is, where the victim got hurt, and the defendant, say, opened the gate, walked into this private area, then it wouldn't be an enhanced charge. It would be based on a battery on private property. Well, potentially, Your Honor. I guess it would depend if it was a locked gate. Or if there was a latch on it. If there was some obstruction preventing the defendant from accessing that, then I think it would go back to Justice Carter's earlier point that there was some restricted access. Therefore, under the facts of that hypothetical, it may not be considered a public place of accommodation. That's what I'm saying. Under our definition. Because I think by the fact that you would have a locked gate, that necessarily kind of means that it is not a... Or a latch to prevent somebody from coming in. Yeah, and maybe it wouldn't be a public place then at that point. It would be a private place. But again, that would be a question for the jury in that hypothetical to determine. But the enhanced charge wouldn't exist either. Well, so that's actually to my second point, Your Honor. It could still apply. And the importance here is this on or about language that precedes the public place of accommodation language. And the legislature included that language, that on or about language, to necessarily afford the fact finder some leeway in determining whether a particular location is in fact a public place of accommodation. And so if we're talking about a couple of feet, you know, one feet, or excuse me, three or four feet on one side versus the other, I think the legislature's intent would be frustrated by relieving a defendant of enhanced criminal punishment just because that conduct took place three, three or four feet on the other side of one boundary line or not. Of course, there are limits to that. And I think as the court in People v. Foster pointed out, they used a very useful example of, you know, in a gas station convenience store, behind the counter of a gas station convenience store is a place that is usually only, not exactly made available to the public, but is made available to the employees who are helping the customers. If a battery took place on that side of the convenience store, you know, behind the desk, the counter, that would still be properly charged as an aggravated battery because of the on or about language. And so the point is here, Your Honor, the legislature wanted to broadly prevent exactly the type of conduct that occurred here. And what is accommodation? I'm sorry, Your Honor? What is accommodation? Accommodation? So our definition of accommodation that we propose from the Webster's Third New International Dictionary is something that is supplied, or something that is supplied for a convenience or for a need. And in this case, the conveniences that is being supplied is this easier access to these elevated front doors of this apartment unit. Your definition encompasses all of the ways you can charge an aggravated battery. I mean, a public way is accessible to the public, and it's there for, you know, convenience and to satisfy need. A public building is accessible to the public, and it's there to, you know, satisfy need and for convenience. I mean, it seems like your definition, we don't even need all these other things. We can just throw them all out. Everything would be a public place of accommodation or amusement. Well, no, not necessarily, Your Honor. I think with respect to public way, you know, that is used for a very specific purpose by the public. Maybe that would be, there's some overlap there in the terms, but public property, certainly there are areas of this courthouse that are not made available to members of the public, but that would nonetheless be properly charged under the public property part of the aggravated battery statute. But you wouldn't, you know, as the justice is inquiring, you don't need any of the other stuff. All you need is the general one about place of public accommodation. You can throw all this other stuff out. That covers everything. No, Your Honor, not necessarily. I mean, again, there are places in this very courthouse as part of public property that are places that are not made available to the public. And certainly, Your Honor's chambers are places that, if a battery took place in those places, that would not be a public place of accommodation because it is a place that is not made available to the public. And stepping aside just back for a moment, Your Honors, that there may be some overlap in these terms. No, I'm not talking about, you know, like inside a department. I'm talking about the other definitions in the statute. Yeah, and that it may be. It would not all be encompassed in public accommodation. It would not all be encompassed in public accommodation, Your Honor, for the example that I just pointed out. I mean, also, we have, you know, for example, a National Guard military base. That is another place that is public property, but it certainly has, you know, very robust limitations on who may enter that property. That aggravated battery occurring or, excuse me, a battery occurring on a National Guard base in this State, for example, would be aggravated battery not because it took place in a public place of accommodation, but because it took place on public property. And, again, I just wanted to emphasize that the fact that the legislature broadly intended to protect members of the public by listing out all of these different places that members of the public frequent is no reason for this Court to find some constitutional infirmity with the statute or this particular phrase that it chose. The issue has not been raised constitutionally, infirmity. Well, defendant does address it kind of in passing at the end of his brief regarding whether this is like a due process issue or raises a proportionate penalties issue. Because of the way that defendant is presented, we would argue that that issue has been forfeited. But we do not think here that the statute as written is overbroad or that there is any issue with its constitutionality. The legislature has the inherent authority to broadly define violent conduct and to, you know, affix certain penalties for that conduct. And even if, as defendant suggests, that, you know, most of the batteries occurring in this State could be charged as aggravated batteries, there's nothing wrong with that. I mean, certainly there are batteries that are ---- Every front door at every residence is a public accommodation. Again, Your Honor, I don't think the front door itself, you know, the threshold The steps to the front door is a public accommodation. Yes, and of course, depending on the very facts of the hypothetical regarding, you know, the access and the specific use. A locked gateway. Yes, assuming that would be a public accommodation because for the reasons that we've already discussed, there is a specific purpose that is being offered for members of the public to approach trick-or-treaters, delivery persons, canvassers, police officers, to approach, to knock on the front door, and to leave. Counsel, I want to ask you a question. Tell me how you want the court to interpret the language on or about a public way. What's the on or about? I think it's hard to give, like, a precise interpretation, but from case law and in light of the legislative intent to broadly prevent and punish more severely this type of conduct that occurred in this case, it just is there to afford a fact finder some leeway, given the very specific facts of the case, to determine whether or not a particular location could fall under the statute's reach. Leeway? Yes, yeah, so basically. The term you're using, leeway. Pardon? A leeway to do that. Yeah, and that's, I believe, from Illinois case law, that that was why the court chose to analyze that term and give it that meaning of some leeway, because the harm to a member of the public, whether it occurs, like, in the gas station convenience store context, whether it's three feet on one side of a line or three feet on the other side of the line, it still presents the same harm to a member of the public, whether or not it occurs on either side of that boundary line. So can you point out for us a case where a non-business was found to be a place of public accommodation, other than the one we're dealing with now? Yeah, Your Honor, I think in People v. Perguson, it's an interesting example. The facts are a little clear where exactly the aggravated battery took place, but it was quite a distance away from the front doors of a shopping mall. So it was, and I see that my time has expired. Let me answer the question. Okay. Thank you, Your Honor. So I think in that instance, you know, there was a near a shopping mall, but it may not. There was no discussion of the on or about language, you know, satisfying the statutory. It was connected to a business. Not necessarily. I don't know where exactly it was, but it was, I mean, many feet away, many, many feet away from the shopping mall's front doors, Your Honor. But on the property of the shopping mall. It's unclear whether it was on the actual property of the shopping mall, Your Honor. And we ask that this Court affirm the judgment of the Illinois Appellate Court. Thank you, Your Honors. Thank you very much. Counsel? I just have a, I just have a few points in rebuttal. Initially, to answer your question, Justice White, in Perkinson, my reflection of the case is that it was a shopping mall. I believe it was the Fox Valley Shopping Mall in Aurora. And the battery occurs in the area in front of the entrance to the mall. And there was some language that the battery occurs around, like, 40 feet, 50, between 40 to, like, 50-ish is in the facts. I don't think there's a specific measurement, but that was roughly the measurement that was given in the facts. So that, to your point, would be another location that's a business. And to the language of on or about, I think this Perkinson case, and to some extent, even Lee and Ward illustrate that language, where the batteries occur, maybe not inside of the shopping mall, which is clearly a public place of accommodation, but it occurs on the property right outside of the door. Or in Ward, it was the parking lot of a hotel. Lee was the parking lot to a convenience store. And then just as Carter recognized, here the question is the stoop at the front door to a home. To consider this a private location, this is not a public location. To consider it a private, one need not build a fence around their house with a locked gate or create some obstruction, but the purpose of the stoop, to the extent that it accommodates people, the stoop is created for the homeowner to enter their house. It may also be used by people invited to the home. It may also be used for people for very limited purposes. But to the extent it's satisfying a need, it's satisfying a need for the homeowner to enter his house. And similar, I believe the State referenced Al Navare was a case. I believe the State referenced where they said that accessibility alone isn't enough because there the court recognized that emergency room is not a public place of accommodation. Well, the reason the court recognized this is they know an emergency room may be open to the public, but it's only open to specific individuals, people seeking treatment, and for a very limited purpose of receiving treatment. And to the stoop at one's front door is arguably more limited than an emergency room in a hospital. This is an area that is intimately part of the home. It accommodates the public in the same sense that the door itself would accommodate the public as a way to enter. And to Justice Burke's point, the appellate court here relies exclusively upon this accessibility language. There's no discussion of accommodation. And importantly, where they get this language from is the people versus ward case. And in that case, they amend an indictment from public way, similar to here, actually. They're amending a change from public way to public place of accommodation. And there, in finding that it was essentially a formal change, the court says the essential allegation amongst all of these categories are places accessible to the public. But for public place of accommodation, it's not just a public place. It has that accessibility aspect. All of these locations do. But it also has of accommodation or amusement. And then, Justice Tice, I did want to note, because I'm not sure I was a little unclear earlier. I apologize. When they amended the indictment, defense counsel did object to the amendment. I believe the objection, though, had to do with it was a substantive change versus formal. I don't believe the objection was necessarily a definition of it. However, in closing argument and in the case, the argument is this is a private residence. It's a home. It's the front door. It is not a public place of accommodation. So I just wanted to clarify that. And here, the victim was a homeowner. Correct. He walked out of this front door, and as he walked out of this front door, he was struck by the person coming from the house next door. Correct? So the homeowner actually never left his apartment or his unit, his home. He was actually inside the whole time. What had happened was the homeowner was inside of his unit the entire time. The state charges at the end of the trial, they go, the stoop at the door is a public place of accommodation, largely relying on this accessibility language, which is what the second district in affirming the conviction relied on, in that, well, anybody from the public can walk up to the stoop. So this issue was not presented at trial. So nobody talked like this. Nobody asked questions about this. You're saying the evidence at trial was that the man who was struck was inside his home the whole time? Correct. The evidence at trial was that the Mr. Whitehead is visiting his mom, who is the next-door neighbor. He leaves the home. It is a shared stoop, but each portion of the stoop is to the door. He steps off of the stoop, and this neighbor opens his door, and Mr. Whitehead says, mind your business, or something along those lines, steps onto the stoop, so he's now immediately at the threshold of the door, and he batters the individual who stays inside of his home the entire time. And then the argument at trial, and then how the appellate court affirmed it, was the location where Mr. Whitehead was at was the stoop at the threshold of the door. That's a public place of accommodation, and they rely entirely on because he was able to be there is how this case has reached this point. And, again, if Your Honors have no further questions, I would again just respectfully ask this Court reverse Mr. Whitehead's aggravated battery conviction and reduce it to Ms. Sumita Battery. Thank you. Thank you very much, counsel. This case, number 128-051, of the people of the state of Illinois, v. Bonneville-Whitehead, case number 12, will be taken under review.